CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 16 2014
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KELVIN CANADA, | ) | Civil Action No. 7:13cv00323 |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. DANIEL MILLER, *et al.*, | ) | By: Samuel G. Wilson |
|    Defendants. | ) | United States District Judge |

Kelvin A. Canada, a Virginia inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C § 1983 for damages and injunctive relief against Dr. Daniel Miller,[1] Nurse Vicki Phipps,[2] and Fred Schilling, the Health Services Director at Virginia Department of Corrections, alleging Dr. Miller and Nurse Phipps were deliberately indifferent regarding medical treatment for his shoulder while at Red Onion State Prison ("ROSP"), and Schilling was deliberately indifferent for his response to Canada's grievance appeal. Dr. Miller and Nurse Phipps have moved for summary judgment with supporting exhibits and affidavits detailing Canada's treatment and prognosis, and Schilling has moved to dismiss. Because the uncontradicted evidence shows that Dr. Miller and Nurse Phipps were not deliberately indifferent and Canada fails to state a plausible claim against Schilling, the court grants their respective motions.

I.

According to his complaint, Canada had two shoulder surgeries, one in late 2011 and another in early 2012, for which he received post-surgical care that included physical therapy twice a month at Sussex I State Prison ("Sussex").[3] (Compl. at ¶ 1-5) Canada was then

---

[1] Dr. Miller is an independent contractor who provided medical services to inmates at ROSP from March 2012 through September 2013.

[2] Nurse Phipps is a Registered Nurse employed at ROSP as the Director of Nursing.

[3] The court is familiar with Canada, who has filed four previous cases. Canada v. Fannin, No. 7:10cv00432 (W.D. Va. Sept. 1, 2011) (summary judgment granted); Canada v. Wright, No. 7:11cv00499 (W.D. Va. Oct. 12, 2012) (judgment from jury verdict in defendants' favor);

transferred to ROSP[4] where, he alleges, from October 2012 until May 2013, Dr. Miller and Nurse Phipps cancelled his physical therapy appointments and denied him adequate medical care for his shoulder injury. (Compl. at ¶ 7-9) Canada's only allegation against Schilling is that he responded to Canada's grievance appeal, stating: "[T]he decision to provide you with physical-therapy or referral to an orthopedic specialist rests with the clinical judgment of Dr. Miller,"[5] which Canada argues shows Schilling "was clearly deliberate[ly] indifferent by referring Dr. Miller to treat plaintiff['s] orthopedic condition because he/she knew that Dr. Miller is an M.D. and not a physical-therapist or orthopedic [specialist]." (Compl. at ¶ 11-12)

Schilling has moved to dismiss, and Dr. Miller and Nurse Phipps have moved for summary judgment with supporting exhibits and affidavits. According to the uncontroverted evidence, ROSP medical staff saw Canada at least 16 times from October 2012 to May 2013. (ROSP Med. Rec. at 60-83) Dr. Miller evaluated Canada during his intake evaluation and, upon reviewing his medical file, observed that Canada's Sussex medical records noted he "had adequate PT/OT and as per last 8/31/12 (physical therapy) visit, he's regaining more strength as he continues to do his own Theraband exercises."[6] (Miller Aff. at ¶ 7) Based on Canada's medical records and previous examinations, Dr. Miller "saw no indication for further outside

---

Canada v. Davis, No. 7:11cv00569 (W.D. Va. Jan. 29, 2013) (adopting recommendation for dismissal); Canada v. Mathena, No. 7:13cv00322 (W.D. Va. Jul. 17, 2013) (pending).
[4] Canada was transferred from Sussex to ROSP to attend a jury trial in Abingdon. (Compl. at 5)
[5] Canada submitted in support of his complaint the grievance document containing Schilling's full response, which provides: "Dr. Miller, the ROSP physician, is responsible for your care and he will determine the course of your shoulder treatment. The decision to provide you an order for physic[al] therapy or referral to an orthopedic specialist rests with the clinical judgment of Dr. Miller. As you have been advised, you are receiving the treatment for your shoulder that [the] ROSP physician has deemed to be appropriate." (Compl. Exh. 3)
[6] According to Canada's Sussex medical records, which Dr. Miller submitted in support of his motion, the physician at Sussex noted in preparation for Canada's transfer to ROSP: "Patient has had adequate PT/OT and as per last 8/31/12 visit, he's regaining more strength as he continues to do his own Theraband exercises. He's expected to continue to get better as he continues w/ own PT exercises." (ROSP Med. Rec. at 60; Miller Aff. at ¶ 7)

physical therapy." (Miller Aff. at ¶ 11) Instead, Dr. Miller prescribed Motrin for Canada's pain and encouraged him to proceed with various range of motion exercises. (Miller Aff. at ¶ 9-11) Canada refused to take the Motrin and to be seen for multiple sick calls he requested, but asked Dr. Miller for Therabands and Tylenol #3 with codeine. (Miller Aff. ¶ 10) Dr. Miller informed Canada the Therabands had been ordered and explained that Tylenol #3 with codeine is "usually reserved for people experiencing pain immediately after surgery."[7] (Id.)

By November 2012, Canada had received a Theraband, and Dr. Miller noted in Canada's medical records that Canada's range of motion for both arms and shoulders was "very good." (Id.) Several months later, Canada appeared to have trouble making a fist, and Dr. Miller ordered an electromyogram (EMG) to check for possible nerve injury and prescribed Naproxen (a pain reliever), which Canada refused to take. (Miller Aff. at ¶ 12-4) The EMG showed some nerve injury, but the neurologist did not recommend any additional physical therapy.[8] (ROSP Med. Rec. at 88-9) Canada's medical records show that Dr. Miller continued to provide medical care for Canada until August 2013, including having ROSP personnel use a "double cuff" to reduce the stress on Canada's shoulder, ordering a follow-up telemedicine visit with an orthopedic specialist at Medical College of Virginia, and prescribing another medication that Canada refused to take.

Canada is currently housed at Sussex, where he has been receiving physical therapy. He has responded to the various motions reaffirming his allegations, and the matter is ripe for disposition.

---

[7] According to his affidavit, Dr. Miller observed Canada "making very natural and seemingly painless gestures with his hands, arms, and shoulders during which time he was not on any pain medications." (Miller Aff. ¶ 10)

[8] The neurologist's report indicates that she initially suggested physical therapy to treat the nerve damage, but after speaking with Dr. Miller, who told her that Canada had completed a course of physical therapy with no improvement, she ultimately recommended that physical therapy should not be pursued. (ROSP Med. Rec. at p. 87)

## II.

Canada maintains Dr. Miller and Nurse Phipps were deliberately indifferent for failing to continue post-surgical care for his shoulder. Because the uncontroverted evidence shows Dr. Miller and Nurse Phipps took exhaustive steps to care for Canada's shoulder injury, the court will grant their motion for summary judgment.[9]

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). To prevail on a deliberate indifference claim, an inmate must allege he suffered a deprivation that was "objectively sufficiently serious" and "that subjectively the officials acted with a sufficiently culpable state of mind." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). This is "a very high standard" and a showing of mere negligence or medical malpractice will not suffice. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999) (citation omitted). Instead, the official's conduct must have been so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Militier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment," Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996); Lewis v. Lappin, Nos. 3:10cv130, 3:10cv568, and 3:10cv684, 2011 WL 4961366, at *3 (E.D. Va. 2011), and a mere disagreement between an inmate and medical personnel regarding diagnosis or course of

---

[9] A court should grant summary judgment when the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact is in dispute, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

treatment does not state an Eighth Amendment claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

Here, Dr. Miller and Nurse Phipps provided Canada with prescription medications, rehabilitative aids, neurology consults, EMG testing, and orthopedic consults. Despite their efforts, Canada was often non-compliant by refusing to take medications and to allow medical staff to see him in response to his sick calls. Canada has marshaled nothing to show that Dr. Miller's determination about the physical therapy was based on anything other than his informed medical judgment in light of Canada's Sussex medical records which indicated Canada had received sufficient physical therapy. Although Canada may disagree with his course of treatment at ROSP, such a disagreement fails to state an Eighth Amendment claim. Finding Dr. Miller and Nurse Phipps took exhaustive measures to care for Canada's shoulder injury, the court will grant their motions for summary judgment.[10]

### III.

The absence of any deliberate indifference by medical personnel also ends the inquiry as to Schilling.[11] Even so, inmates do not have a constitutionally protected right to a grievance procedure and an official is not liable under § 1983 for a grievance response. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Brown v. Va. Dep't Corr., No. 6:07cv00033, 2009 WL 87459, at

---

[10] To the extent Canada attempts to use the fact that he began receiving physical therapy when he returned to Sussex as evidence that the defendants denied him adequate medical treatment, this is not a forum to litigate medical malpractice and his argument is unavailing. See Estelle, 429 U.S. at 106.

[11] The court notes that Canada misconstrues Schilling's response. Canada asserts Schilling "was clearly deliberate[ly] indifferent by referring Dr. Miller to treat plaintiff['s] orthopedic condition because he/she knew that Dr. Miller is an M.D. and not a physical-therapist or orthopedic [specialist]." (Compl., Claim ¶ 12) It is clear, however, from the grievance response that Schilling did not refer Canada for treatment by Dr. Miller. Rather, Schilling simply stated that Dr. Miller, as the ROSP medical doctor, is responsible for determining whether Canada needed physical therapy or referral to an orthopedic specialist.

5

*13. (W.D. Va. Jan. 9, 2009). Canada thus fails to raise a plausible claim against Schilling, and the court will dismiss it.[12]

## IV.

For the reasons stated, the court grants defendants' motions for summary judgment and to dismiss.

**ENTER**: April 16, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[12] Canada has also filed a "motion for recusal," but has not shown bias or partiality. Bias requires "a favorable or unfavorable disposition or opinion that is somehow *wrongful or inappropriate*, either because it is undeserved . . . rests upon knowledge that the subject ought not to possess . . . [or] is excessive in degree." Liteky v. United States, 510 U.S. 540, 550 (1994). Partiality requires an apparent wrongful or inappropriate disposition toward a party. United States v. Gordon, 61 F.3d 263, 267 (4th Cir. 1995) (citing Liteky, 510 U.S. at 552). Alleging bias or prejudice of a judge's views or rulings that arise from facts or events of current or prior proceedings is an insufficient basis for recusal unless the opinions "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555; see Berger v. United States, 255 U.S. 22, 28-29 (1921). Finding no grounds for recusal, the court denies Canada's motion.